IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02290-NRN

JORDON MACDONALD, on behalf of himself and all similarly situated persons,

Plaintiff,

v.

COVENANT TESTING TECHNOLOGIES, LLC,

Defendant.

---

**ORDER ON**
**PLAINTIFF'S MOTION FOR APPROVAL**
**OF *HOFFMAN-LAROCHE* NOTICE (DKT. #24)**

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on Plaintiff's Motion for Approval of *Hoffman-LaRoche* Notice (Dkt. #24). This case was directly assigned to the undersigned Magistrate Judge pursuant to D.C.COLO.LCivR 40.1(c), and the parties consented to Magistrate Judge jurisdiction pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c) (Dkt. #9).

The Court has reviewed and carefully considered Plaintiff's motion (Dkt. #24), Defendant's Response in Opposition (Dkt. #26), Plaintiff's Reply (Dkt. #27), and the exhibits attached to these briefs. The Court also heard oral argument at a hearing held on April 10, 2019 (Dkt. #28), has taken judicial notice of the Court's case file, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law.

Being fully informed, and for the reasons discussed below, it is ORDERED that Plaintiff's Motion is GRANTED in part and DENIED in part without prejudice.

## I. Background[1]

Defendant Covenant Testing Technologies, LLC ("Covenant") is an oilfield service company that provides flowback and well-testing services in Colorado and Texas. Plaintiff Jordan MacDonald is a former Covenant employee who provided testing services primarily in Weld County, Colorado.

According to Mr. MacDonald, he frequently was required to work more than twelve (12) hours each day and/or more than forty (40) hours each work week, but was not compensated at the time and a half rate for all of his overtime hours, as required under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"). Mr. MacDonald alleges that other current and former Covenant employees, who are similarly situated to him, also were not properly compensated for all of their overtime hours in violation of the FLSA. He thus seeks certification of an FLSA "opt-in" collective action pursuant to 29 U.S.C. § 216(b) to recover damages and backpay for all such employees.[2]

Mr. MacDonald has identified two specific Covenant overtime pay policies that allegedly violate the FLSA. First, he asserts that Covenant paid him and other employees a "per diem" amount in excess of their reimbursable business expenses, and that this per diem was actually additional compensation that should have been included in his and other employees' overtime rate. Second, Mr. MacDonald alleges that

---

[1] The facts below are taken from Mr. MacDonald's First Amended Class and Collective Action Complaint (Dkt. #16), Defendant's Objections and Responses to Plaintiff's First Set of Discovery Responses (Dkt. #24-1), and the parties' briefing on the motion.

[2] Mr. MacDonald also brings state law claims alleging violations of the Colorado Wage Claim Act, Colo. Rev. Stat. §§ 8-4-101–123, and the Colorado Minimum Wage Act, Colo. Rev. Stat. §§ 8-6-101–119. These claims are not germane to his *Hoffman-LaRoche* notice motion, and therefore the Court does not address them.

Covenant failed to properly calculate his and other employees' overtime hours. Specifically, Mr. MacDonald alleges that Covenant required him to pick up and drop off fellow workers, and drive them to and from worksites, but failed to pay him overtime for this pre- and post-shift drive time.

## II. Legal Standard

The FLSA governs the payment of minimum wages and overtime compensation between an employer and its employees. *See* 29 U.S.C. §§ 206–207. Under the FLSA, a covered employer must pay its employees for the time that it employs them, and generally requires covered employers to compensate employees for work exceeding forty hours in a work week, or twelve hours in any given day. *See* 29 U.S.C. §§ 206(a), 207(a). The required overtime compensation is one and one-half times an employee's "regular rate" of pay. 29 U.S.C. § 207(e).

Section 216(b) of the FLSA authorizes private individuals to recover damages for violations of minimum wage and overtime provisions. It provides, in relevant part, that "[a]n action to recover the liability [for unpaid overtime compensation, retaliation, and liquidated damages] may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). The FLSA thus gives plaintiffs the opportunity to proceed collectively; which, in turn, allows "plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources." *Hoffmann–La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989) (interpreting the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634, which explicitly incorporates the collective action provisions of the FLSA).

Unlike class action members under Fed. R. Civ. P. 23, plaintiffs who wish to participate in a FLSA collective action must expressly opt in to the action in writing. 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). *See also In re Am. Family Mut. Ins. Co. Overtime Pay Litigation*, 638 F. Supp. 2d 1290, 1298 (D. Colo. 2009). "FLSA action claimants [also] retain the right to separately pursue their rights and are only bound by the outcome of the collective action if they expressly choose to join in the litigation." *Slaughter v. Sykes Enterprises, Inc.*, No. 17-CV-02038-KLM, 2018 WL 1556881, at *1 (D. Colo. Mar. 12, 2018) (citing *Genesis Healthcare Corp. v. Smith*, 569 U.S. 66, 74 (2013)).

In *Thiessen v. General Electric Capital Corp.*, the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") approved a two-step, case-by-case process, known as an ad hoc approach, for determining whether putative collective members are "similarly situated" to the named plaintiff. 267 F.3d 1095, 1105 (10th Cir. 2001).[3] Pursuant to this approach, at the initial "notice stage"—where we are in this case—the trial court determines whether the plaintiff has asserted "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Id.* at 1102 (also noting that, "[u]nfortunately, § 216(b) does not define the term

---

[3] *Thiessen*, like *Hoffman-LaRoche*, involved a collective action under the ADEA. Because the ADEA "expressly borrows the opt-in class [collective] action mechanism" set forth in § 216(b), courts routinely apply *Thiessen* to FLSA collective actions. *Id*. at 1102. *See*, *e.g.*, *Kaiser v. At The Beach, Inc.*, 2010 WL 5114729, at *4 n.9 (N.D. Okla. Dec. 9, 2010); *Brown v. Money Tree Mortg., Inc.*, 222 F.R.D. 676, 679 (D. Kan. 2004).

‘similarly situated.’”). The *Thiessen* court concluded that “[a]rguably, the *ad hoc* approach is the best . . . because it is not tied to the Rule 23 standards.” *Id*. at 1105.

During the second stage—which is “[a]t the conclusion of discovery,” and “often prompted by a motion to decertify”—the court applies a stricter standard to determine whether the action should continue as a collective action. *Id*. at 1102-03. At the second stage, the “court reviews several factors, including ‘(1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant which appear to be individual to each plaintiff; (3) fairness and procedural considerations; and (4) whether plaintiffs made [any required filings] before instituting suit.’” *Id*. at 1103 (quoting *Vaszlavik v. Storage Tech. Corp.,* 175 F.R.D. 672, 678 (D. Colo. 1997)).

Numerous courts in this District have followed this ad hoc approach in determining whether plaintiffs can move forward collectively under the FLSA. *See*, *e.g.*, *Baldozier v. American Family Mut. Ins. Co.*, 375 F. Supp. 2d 1089, 1092 (D. Colo. 2005); *but see Turner v. Chipotle Mexican Grill, Inc.,* 123 F. Supp. 3d, 1300, 1309 (D. Colo. 2015) (rejecting the two-step ad hoc process in favor of an approach that “presumptively allow[s] workers bringing the same statutory claim against the same employer to join as a collective, with the understanding that individuals may be challenged and severed from the collective if the basis for their joinder proves erroneous.”)[4]

---

[4] Mr. MacDonald argues the Court should apply the presumptive joinder standard articulated by Judge Kane in *Turner*. (Dkt. #24 at 2-3.) The Court declines to do so, and instead applies the first step in the two-step conditional certification process for FLSA collective actions endorsed by *Thiessen* and other Tenth Circuit precedent.

## III. Analysis

A. Conditional, Initial Certification—the "Notice Stage"

This case is at the initial "notice stage." By seeking approval of his proposed *Hoffman-LaRoche* Notice, Mr. MacDonald is asking the Court to conditionally certify this case as a collective action pursuant to § 216(b) of the FLSA. With respect to initial or conditional certification, the court determines whether plaintiffs are similarly situated for purposes of sending notice to putative class members. *Thiessen*, 267 F.3d at 1102.

Because this determination typically is made before much (if any) discovery has been conducted, the plaintiff's burden is light: he is required to provide "nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id*. *See also Stransky v. HealthONE of Denver, Inc.*, No. 11-cv-02888-WJM-MJW, 2012 WL 6548108, at *4 (D. Colo. Dec. 14, 2012). In addition, "the court does not weigh evidence, resolve factual disputes, or rule on the merits of [a] plaintiff[']s claims," but "need only consider the substantial allegations of the complaint along with any supporting affidavits or declarations." *Avendano v. Averus*, No. 14-cv-01614-CMA-MJW, 2015 WL 1529354, at *4 (D. Colo. Mar. 31, 2015) (citing *Smith v. Pizza Hut, Inc.*, Mo. 09-cv-01632-CMA, 2012 WL 1414325 (D. Colo. Apr. 21, 2012)).

Accordingly, this is a "lenient" standard, *Baldozier*, 375 F. Supp. 2d at 1092, "which typically results in conditional certification of a representative class." *Renfro v. Spartan Comput. Servs., Inc.*, 243 F.R.D. 431, 432 (D. Kan. 2007). It should be kept in mind, however, that "[t]hough this burden is modest, it is not non-existent, and it cannot be satisfied simply by unsupported assertions." *Ward v. Express Messenger Sys., Inc.*, No. 17-cv-02005-NYW, 2018 WL 1604622, at *3 (D. Colo. April 3, 2018) (citation

omitted). For example, "[t]he court may deny conditional certification where the complaint is wholly conclusory in nature, the supporting affidavit relies on hearsay from unidentified sources, and the nature of the violation is rendered ambiguous by the particular circumstances of the only names plaintiff." *Id*.

With these principles in mind, the Court turns to the merits of Mr. MacDonald's motion.

1. Clarifying the Putative Collective Members

According to his motion, Mr. MacDonald seeks to represent a class consisting of "All current and former Well Testing and Production Operators who worked for Defendant in the United States at any time from September 6, 2015 to present." (Dkt. #24 at 4.) In his Reply (Dkt. #27 at 2 n.2), and at the April 10, 2019 hearing, however, Mr. MacDonald's counsel clarified that Mr. MacDonald only seeks to represent a class of current and former operators who worked for Covenant in Colorado and Texas.

2. The Per Diem Pay Policy

Mr. MacDonald claims that Covenant, under its per diem pay policy, failed to include the per diem amount in overtime calculations, and thus failed to pay him and other employees for all the time-and-one-half overtime they earned. Mr. MacDonald alleges other Covenant operators are similarly situated because they were subject to the same per diem pay policy.

In response, Covenant asserts that Mr. MacDonald has not provided evidence that he is similarly situated to other Covenant operators. (*Id*. at 2, 10-12.) Mr. MacDonald, however, has offered Covenant's own answers to interrogatories to support his allegations (Dkt. #24-1.) Specifically, Covenant stated in these answers that "it paid

a $39.00 per diem to Well Testing Operators and Production Operators for each day in which they worked 12 hours or more to pay for meals, food, incidentals, and other expenses." (*Id*. at 5, 7.) It therefore is undisputed that, at this stage, Mr. MacDonald and other Well Testing Operators and Production Operators were all subject to Covenant's per diem pay policy.

Covenant's primary objection appears to be that Mr. MacDonald has not presented sufficient evidence (i.e. "substantial allegations") that its per diem policy "victimized him or anyone else." (Dkt. #26 at 1, 8-10.) Covenant asserts there is no evidence that "he did not have any reimbursable expenses, such that Covenant's per diem policy was unlawful," and that his "own deposition reveals he did have such expenses, as did others he worked with." (*Id*. at 8.) But whether Covenant's per diem pay policy is unlawful, and whether the particular circumstances of other operators subject to the per diem pay policy varied, are all questions for the *second* stage of collective action certification, which occurs only after the parties can identify and conduct discovery related to the opt-in plaintiffs. *See Thiessen*, 267 F.3d at 1103. Ultimately, if the opt-in plaintiffs are not found to be similarly situated, then the collective will not be certified.

The Court thus finds that, at this initial notice stage, Mr. MacDonald has presented substantial allegations that the putative collective members were subject to a single decision, policy, or plan: Covenant's per diem pay policy. As a result, the Court GRANTS Mr. MacDonald's motion to the extent it requests conditional certification of a collective action consisting of all current and former Well Testing Operators and Production Operators who worked for Covenant in Colorado or Texas, and who were

subject to Covenant's per diem pay policy, at any time from September 6, 2015 (three years prior to the date on which the complaint was filed) to the present.

3. The Travel-Time Pay Policy

In his First Amended Class and Collective Action Complaint, Mr. MacDonald asserts he "was required to pick up and drop off fellow workers and drive them to and from worksites but was not paid overtime for these work hours." (Dkt. #16 ¶ 8.) He also states that he seeks to certify a class of current and former Covenant employees "who were not paid for pre- and post-shift drive time." (*Id*. at ¶ 11.) In his motion, Mr. MacDonald alleges that Covenant "did not pay Operators for their drive time to and from remote oilfield cites [sic]."[5] (Dkt. #24 at 4.)

Covenant argues these shifting and unsupported allegations are not "substantial" enough to warrant conditional certification of a collective action. (Dkt. #26 at 6.) Covenant also asserts that none of Mr. MacDonald's statements "even allege a violation of the FLSA because even traveling to 'remote' locations is not compensable under the FLSA," relying on the Tenth Circuit's decision in *Smith v. Aztec Well Serv. Co.*, 462 F.3d 1274 (10th Cir. 2006). The Court agrees with both arguments.

Addressing the latter argument first, the Tenth Circuit unequivocally ruled that travel time to and from well sites, even those "in remote locations hours away," and even if the employees were required to carpool, is *not* compensable "work" under the FLSA. *Id*. at 1286-87. Indeed, such travel time is "clearly exclude[d] . . . from the scope of the FLSA" by the Portal to Portal Act, 29 U.S.C. § 785.35—*unless* "active duties are

---

[5] During his deposition, Mr. MacDonald clarified that the remote oil field sites to which he refers were all located in Colorado, and were all "about an hour away from where [he] live[d]." (Dkt. #26-2 at 11.)

performed during travel time," i.e. "an activity which is so closely related to the work which they and other employees perform, that it must be considered an integral and indispensable part of their principal activities." *Id*.

In *Smith*, for example, the plaintiffs argued, albeit unsuccessfully, that their travel to and from well sites should be deemed "integral and indispensable to their principal activities" because they often transported equipment, and routinely discussed safety and other "matters essential to their work." *Id*. at 1288-90. But because there was no evidence that they "spent the *majority* of their travel time engaged in these work-related conversations," and there was evidence that plaintiffs generally were free to spend their travel time as they wished, such time was not compensable under the FLSA. *Id*. at 1291 (emphasis added).

Here, unlike in *Smith*, Mr. MacDonald does not allege that *any* of his time travelling to and from the well sites before and after work was spent engaged in work-related activity—much less most of that time. As such, Mr. MacDonald's allegations, either those in his complaint or in his motion, do not state a viable FLSA claim. Mr. MacDonald also conceded during his deposition that he has no knowledge concerning how or whether Covenant operators in other Colorado districts (other than Greeley, where he worked) or in other states were paid for drive time. (Dkt. #26-2 at 24.)

As for Mr. MacDonald's assertion that Covenant required him to drive other Covenant employees to and from well sites, even assuming this time was compensable under the FLSA (because most of the time was spent engaged in work-related activities), Mr. MacDonald only alleges that *he* was required to do so; and during his deposition, he could only identify the first name of one other operator, Austin, at

Covenant's Greely location, who allegedly was required to do so. (Dkt. #26-2 at 25.) Mr. McDonald agreed he did not know whether any Covenant operators outside of Greeley or in any other state were required to do so. (*Id*. at 26-29, 31.)

Thus, with respect to Covenant's alleged travel-time pay policy, the Court finds that Mr. MacDonald has not presented substantial allegations that the putative collective members were subject to a single decision, policy, or plan, much less one that violated the FLSA. As a result, the Court DENIES without prejudice Mr. MacDonald's request to conditionally certify a collective action in relation to this alleged policy. Upon a more substantial showing that Covenant operators were subject to a single travel-time decision, policy, or plan, Mr. MacDonald may renew his request.

4. Notice to the Conditional Class

Once the Court concludes that conditional certification of a FLSA collective action is appropriate, the Court may authorize plaintiff to disseminate a proper notice and opt-in consent form to putative class members. *Hoffmann-LaRoche*, 493 U.S. at 169-70. *See also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."). The Court has broad discretion regarding the details of the notice sent to potential opt-in plaintiffs. *Id*. at 171. "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (internal citations and quotations omitted).

Mr. MacDonald has provided a proposed Notice (Dkt. #24-2), Covenant has raised objections to the proposed Notice (Dkt. #26 at 15), and Mr. MacDonald has agreed to modify the proposed Notice to reflect some but not all of Covenant's objections. (Dkt. #27 at 5-6.) The parties are directed to meet and confer regarding any remaining differences they have in relation to the Notice, and to submit to the Court within seven days of this Order a modified proposed Notice that is consistent with this Order, and identifies any disputes that remain unresolved.

Two issues remain for the Court to address: the date from which the class period should extend back, and the method of notice to be provided potential plaintiffs.

Concerning the first issue, Covenant argues that "the potential class period (and list of potential plaintiffs) . . . should, at most, extend back three years from the date of mailing of the class notice or the date on which conditional certification is granted." (Dkt. #26 at 15) (citing *Norwood v. WBS, Inc.*, No. 15-cv-00622-MSK-KMT, 2016 WL 7666525, *3 (D. Colo. Sept. 29, 2016)). Mr. MacDonald, on the other hand, asks that notice be issued three years back from the date on which this action was filed, to September 6, 2015, to preserve the possibility of equitable tolling. (Dkt. #27 at 9.)

The Court finds insightful the reasoning of Judge Raymond P. Moore, who extensively addressed the issue of the temporal scope of opt-in plaintiffs and equitable tolling in *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-MJW, 2018 WL 4178532, at *3-*5 (D. Colo. Aug. 31, 2018). The Court thus adopts, as Judge Moore did in *Valverde*, "the 'wait and see' approach as to any tolling," and finds that "the issue of equitable tolling may be raised later, if appropriate, and resolved then, as appropriate." *Id*. As a result, and "to ensure that notice is sent to those individuals who would fall

within the potential group of opt-in plaintiffs if the statute of limitation is ultimately tolled," notice will be given to operators employed by Covenant on or after September 6, 2015, or three years prior to the date on which the complaint was filed. *Id*. at 5.

As for the method of notice, Mr. MacDonald asks the Court to distribute it by United States mail, email, text messages, and postings at job sites. (Dkt. #27 at 7-9.) According to Mr. MacDonald, "since oilfield workers are a transient population, notice by U.S. Mail and e-mail alone creates a significant risk that notice will not be received." (*Id*. at 8.) Covenant objects to using all these methods, arguing that doing so is excessive and intrusive, and that providing notice via U.S. Mail and email is sufficient. (Dkt. #26 at 15.)

The Court finds that sending notice by U.S. Mail, email, and text message is likely to "increase the probability of apprising collective action members of their rights." *Lindsay v. Cutters Wireline Serv., Inc.*, No. 17-cv-01445-PAB-KLM, 2018 WL 4075877, at *3 (D. Colo. Aug. 27, 2018). The Court will not, however, require Covenant to post the notice at job-sites, because Mr. MacDonald has not presented any evidence "that posting will reach a wider audience than mailing." *Nelson v. Firebirds of Overland Park, LLC*, No. 17-2237-JWL, 2018 WL 3023195, at *7 (D. Kan. June 18, 2018).

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Approval of *Hoffman-LaRoche* Notice (Dkt. #24) is **GRANTED IN PART** and **DENIED IN PART without prejudice**. It is

**FURTHER ORDERED** that:

1. This action shall be conditionally certified as a FLSA collective action pursuant to 29 U.S.C. § 216(b), and the class is defined as follows:

   > All current and former Well Testing and Production Operators who worked for Covenant in Colorado or Texas at any time from September 6, 2015 to the present, and who received payments under Covenant's per diem pay policy.

2. The parties shall meet and confer and submit a revised proposed form of Notice within seven days of this Order, i.e., **on or before April 25, 2019**, which conforms with this Order and shall be subject to modification and approval by the Court. If the parties cannot resolve all disputes concerning the proposed notice, the parties shall identify in redline those sections of the proposed Notice that are in dispute, and shall submit a joint statement not to exceed six pages setting forth each side's respective position concerning the dispute, which will be resolved by the Court.

3. Within twenty-one days of the Court's approval of the Notice, Covenant shall provide Plaintiff's counsel with a list of all potential class members in a computer-readable format. The list shall include each potential class member's dates of employment, location worked, last known U.S. Mail address(es), email address(es), and telephone number(s).

4. Within twenty-one days of receiving this list from Covenant, counsel for Plaintiff shall send the Notice by First Class U.S. Mail, email, and text message to the last known address, email address, and telephone number of each of the individuals identified on the above-reference list.

5. Any individuals to whom notice is sent shall “opt in” by returning the necessary documents to Plaintiff’s counsel **within sixty days from the date of the Notice**.

DATED: April 18, 2019

BY THE COURT:

N. Reid Neureiter

N. REID NEUREITER
United States Magistrate Judge