**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-02290-NRN

JORDON MACDONALD, Individually and on behalf of all similarly situated persons,

      Plaintiff

v.

COVENANT TESTING TECHNOLOGIES, LLC,

      Defendant

---

**JOINT MOTION FOR: 1) FINAL APPROVAL OF CLASS
ACTION SETTLEMENT; AND 2) APPROVAL OF FLSA COLLECTIVE ACTION
SETTLEMENT**

---

Plaintiff Jordon MacDonald ("Plaintiff") and Defendant Covenant Testing Technologies, LLC ("Defendant") (collectively, the "Parties"), through their respective counsel, hereby file this *Joint Motion for: 1) Final Approval of Class Action Settlement; and 2) Approval of FLSA Collective Action Settlement.*[1]    In support, the Parties respectfully state as follows:

**I.**    **INTRODUCTION**

Plaintiff Jordon MacDonald filed this class action against Defendant on September 6, 2018 in this Court.  Plaintiff alleged that Defendant failed to include all compensation in calculating the overtime rates of its Texas and Colorado-based hourly field employees.

---

[1] A copy of the Settlement Agreement was attached as Exhibit 1 to the parties' *Joint Motion for Preliminary Approval of Settlement Agreement Certifying Class for Purpose of Settlement, Directing Notice to the Class, and Scheduling Final Approval Hearing* (ECF No. 74).

The additional compensation excluded from overtime rates were "per diems" paid to Defendant's employees.  Plaintiff also alleged that Defendant failed to pay its employees for certain hours spent driving to and from remote worksites.

Subject to final Court approval, the Parties have agreed to settle this action on a class basis for a maximum payment of $1,100,000.00, inclusive of attorney's fees, litigation costs, payroll taxes, enhancement awards, and administration costs.  The settlement is the result of extensive negotiations between the parties during almost two years of litigation, including motion practice, written discovery, depositions, and a full-day mediation before an experienced wage and hour mediator.

The Parties respectfully submit that the proposed settlement is fair, reasonable and adequate, and therefore ask the Court to enter an order: (1) approving the FED. R. CIV. PROC. 23 class action settlement, adjudging its terms to be fair, reasonable, and adequate;  (2) approving the Fair Labor Standards Act ("FLSA") collective action settlement, adjudging its terms to be fair, reasonable and adequate, (3) approving Class Counsel's attorney's fees and litigation costs; and (4) approving a service award to the Class Representative, Jordon MacDonald.

Under the Parties' proposed Settlement, each Rule 23 Class Member and Opt-In Claimant who did not timely and properly opt-out will receive a share of the $1,100,000 settlement fund (such total amount including attorney's fees and costs, the incentive payment, and the payment to the class administrator).  For distribution purposes, the Settlement establishes three groups that will be compensated according to different formulas.  These formulas are different because of: a) differences between Texas and

Colorado state law; and b) differences between Covenant's employment policies in Texas and Colorado.  The formulas are as follows:

- Texas Opt-In Claimants are Defendant's current or former employees based in Texas who returned paperwork to join the lawsuit.  Each Texas Opt-In Claimant will receive a payment of $250.

- Colorado Opt-In Claimants are Defendant's current and former employees based in Colorado who returned paperwork to join the lawsuit.  Each Colorado Opt-In will receive a payment of $250 plus approximately $1.42 for each overtime hour worked.

- Absent Class Members are Defendant's current and former employees based in Colorado who did not return paperwork to join the lawsuit.  Each Absent Class Member will receive a payment of $100 plus approximately $.50 for each overtime hour worked.

The Settlement is fair and reasonable and should be approved by this Court because:  (1) the release narrowly covers only the specific claims at issue and is not a general release or even a release of all wage and hour claims, Settlement Agreement at ¶ IV.D.2; (2) the Rule 23 Class Members and Opt-In Claimants had the opportunity to object to or opt out of the settlement; and (3) the settlement is non-reversionary, i.e., Defendant will pay the entire amount of $1,100,000. 000.

## II.    **BACKGROUND**

### A.    **Procedural and Litigation History**

Plaintiff worked as a field employee for Defendant.  On September 6, 2018, he filed the instant action alleging that Defendant paid its workers per diems that should have

been included in overtime rates under the FLSA and Colorado state law overtime requirements. Plaintiff also alleged under the FLSA and Colorado state law that Covenant failed to pay for certain hours spent driving to and from remote worksites.

On April 18, 2019, the Court certified an FLSA collective action (ECF No. 29) and, thereafter, 235 individuals joined the lawsuit as Opt-In Claimants. On September 7, 2019, Plaintiff filed his M*otion for Class Certification of State Law Claims* (ECF No. 45). While this motion was pending, the parties reached a settlement.

The Parties thoroughly investigated their claims and defenses, engaged in written discovery and depositions, as well as mediation. Moreover, the parties engaged in extensive briefing regarding the various issues including summary judgment briefing regarding the extent to which per diems may be excluded from overtime rates.

### B.    Background of Settlement Negotiations

The Parties conducted an extensive investigation of facts during the prosecution of the litigation over almost two years, which included the formal and informal exchange of information. Counsel for the Parties also analyzed the likelihood of Rule 23 class certification and/or final FLSA collective action certification in the event the Parties did not reach a settlement, as well as facts associated with Plaintiff's claims. The Parties further reviewed records, interviewed witnesses, and took depositions. Numerous tele-conferences were held and emails exchanged between representatives of the Parties in order to attempt to resolve the claims. The case ultimately resolved after a full-day mediation before an experienced wage and hour mediator.

Defendant continues to deny any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff, and further denies that, for any purpose other than

settling this matter, this action is appropriate for class treatment. Defendant contends that it is impossible to establish the commonality and typicality required by Rule 23. Defendant further contends that Plaintiff cannot demonstrate that common issues of law or fact will predominate over individualized inquiries or that a class action is the superior method of resolving the claims of Plaintiff and the putative class members. Defendant contends that individualized inquiries would outweigh any commonality of factual or legal issues and also claims that Plaintiff could not establish, on a class-wide basis, that all employees were entitled to additional overtime pay or pay for allegedly uncompensated travel time.

Plaintiff, on the other hand, asserts that Defendant failed to comply with federal and Colorado law. Class Counsel understands Defendant's position and defenses, but believes Plaintiff, individually and on behalf of the Class and Opt-In Claimants, could ultimately succeed at trial on the basis of common proof. Both Parties recognize the uncertainty of the outcome, and appreciate the expense and time associated with further litigation.

Accordingly, in the interest of resolution, representatives of the Parties participated in lengthy settlement negotiations and ultimately reached a Settlement after taking into account the disputed factual and legal issues, the risks attendant to further prosecution, Defendant's defenses, and the benefits to be received by Class Members. Counsel concluded that settlement on the terms set forth herein is in the best interest of Plaintiff and the Class and is fair and reasonable.

III.    **<u>SETTLEMENT</u>**

A.    **The Settlement Terms**

The Settlement Agreement defines the Settlement Class as all current and former Well Testing and Production Operators who worked for Covenant in Colorado at any time between September 6, 2016 and February 28, 2020, and who received per diems that were not included in the calculation of such employee's regular rate of pay.  Settlement Agreement at ¶ II.A.  The Settlement Agreement also resolves the claims of 235 individuals who "opted in" to the lawsuit as a result of the Court's initial certification of an FLSA collective action.  *Id.*  The "Opt-In Claimants" are those individuals identified on the list attached as Exhibit A to the Settlement Agreement.

The Settlement provides for a $1,100,000.00 settlement amount, which is the maximum amount Defendant is required to pay under the Settlement Agreement. Settlement Agreement at ¶ IV.E.1.  The Settlement is non-reversionary.  All required payments will be made from this amount, including all payments to Settlement Class Members, attorney's fees and litigation expenses, all payroll and withholding taxes, including all employer payroll taxes, settlement administration costs, and any enhancement award.  *Id.*

Plaintiff's counsel has agreed to seek no more than $440,000 (or 40% of the total settlement amount) for attorney's fees, which amount includes all litigation costs. Settlement Agreement at ¶ IV.E.2.  The Settlement Agreement provides for the Class Representative, Jordon MacDonald, to receive an enhancement payment of $15,000.00. Settlement Agreement at ¶ IV.E.3.  To the extent the Court approves lesser amounts for

attorney's fees or litigation costs, the unapproved amounts will be allocated to Settlement Class Members on a pro rata basis.  Settlement Agreement at ¶ IV.E.6.

### B.    The Settlement Payments

The Gross Settlement Amount, less all amounts required to be paid under paragraphs IV.E.2 - E.5 of the Settlement Agreement, will be allocated among the Opt-In Claimants and Settlement Class members as described in Section I, above.  The 1 member of the Settlement Class who opted out of the Settlement will be ineligible to receive any payment.  Settlement Agreement at ¶ IV.7.c.  The settlement payments will be allocated 50 percent to wages and 50 percent to penalties/interest.  Settlement Agreement at ¶ IV.E.7.d.  Settlement checks that cannot be delivered or are not cashed after 180 days of mailing will be donated to cy pres charitable organization(s) designated by counsel for the parties.   Settlement Agreement at ¶ IV.G.3.

### IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT

On June 1, 2020, the Court granted preliminary approval to the Parties' Rule 23 Class Action Settlement.  (ECF No. 78).  The Court also conditionally certified the case under Rule 23 for settlement purposes.  *Id.*

The Settlement Notice and Opt-Out Form was mailed to each of the Rule 23 Class Members and Opt-In Claimants  *See Declarat*ion of Anthony Gomez, attached hereto as Exhibit 1.  Although there was some overlap, there were 1,036 Rule 23 Class Members and 235 Opt-In Claimants.  *Id.*  There were 184 mailings that were returned for which skip tracing was performed.  Notices were then re-mailed to 57 individuals for whom updated information could be found.  *Id.*

The time period to opt-out or object is now closed and 1 putative Class Member (less than .1%) opted-out of the settlement. *Id.* There were no objections. *Id.* On June 1, 2020, the Court set Final Approval Hearing to occur on September 14, 2020. (ECF No. 78).

After the Final Approval Hearing and expiration of applicable appellate deadlines, Defendant's obligation to fund the Settlement and pay the Settlement will be triggered. Defendant will be required to fund the settlement to allow the claims administrator to make all payments including individual payments to the Rule 23 Class Members and Opt-In Claimants.

## V.    THE RULE 23 CLASS SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

### A.    Introduction

Approval of a proposed class action settlement is within the sound discretion of the Court. *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002*); Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir. 1984). Settlements are generally favored, so a court should approve a settlement if it is fair and reasonable. *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 283-284 (D. Colo. 1997)(applying factors considered in class action settlements to settlement of EEOC action). The primary question raised is whether the proposed settlement is "within the range of possible approval." *See, e.g., In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007); *see also Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

Here, the Court preliminarily approved the settlement as fair and reasonable on June 1, 2020. (ECF No. 78). After preliminary approval, the claims administrator

disseminated a detailed notice informing the Class Members and Opt-In Claimants of their right to opt out of, or object to, the settlement. After notice was sent, 1 putative Class Member opted-out and there were no objections.

Again, the authority to approve a settlement of a class action suit is committed to the sound discretion of the trial court, and settlement approval will not be set aside absent an abuse of discretion. *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 324 (10th Cir.1984). Courts apply the following factors to determine whether a proposed Rule 23 class action settlement is fair, reasonable and adequate:

(1)    Whether the proposed settlement was fairly and honestly negotiated;

(2)    Whether serious questions of law and fact exist which place the ultimate outcome of the litigation in doubt;

(3)    Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

(4)    Whether the parties' judgment is that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

The Parties' Rule 23 Class Settlement satisfies all four factors and meets all of the requirements of Rule 23.

**B    The Proposed Settlement Was Fairly and Honestly Negotiated.**

Where a settlement results from arm's-length negotiations between experienced counsel, "the Court may presume the settlement to be fair, adequate, and reasonable." *Lucas*, 234 F.R.D. at 693 citing *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2nd Cir. 2005). As discussed above, the proposed Rule 23 Class Settlement is the product of extensive arm's-length, informed, non-collusive negotiations with the assistance and guidance of an experienced mediator. It was the result of vigorous

advocacy by the Parties.  *See Lucas*, 234 F.R.D. at 693 citing *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).  The Settlement was reached only after extensive analysis by the Parties and their Counsel after discovery and motion practice. Indeed, it was only after significant work was completed by both sides that the Parties scheduled mediation.  This mediation took place when the Parties had a deep understanding of the strengths and weaknesses of the claims, and the extent of recoverable damages.

The amount of the Settlement to be paid by Defendant is a testament to Class Counsel's vigorous representation of the Class throughout these negotiations and throughout years of litigation. *See Lucas*, 234 F.R.D. at 693 (holding that the settlement agreement was fairly and honestly negotiated where "the parties to this litigation have vigorously advocated their respective positions throughout the pendency of the case.") (internal quotations and citation omitted). The history of the Parties' negotiations and the Settlement Agreement's terms demonstrate that the Settlement was fairly and honestly negotiated.

### C.    Serious Disputed Questions Of Law and Fact Remain.

The Court need not reach the merits of the case at this stage, but serious questions of law and fact exist that could impact the result of litigation.  *Lucas*, 234 F.R.D. at 693-94.  "The presence of such doubt tips the balance in favor of settlement because settlement creates a certainty of some recovery, and eliminates doubt, meaning the possibility of no recovery after a long and expensive litigation." *McNeely*, 2008 WL 4816510, at *13.  The Court should also consider whether "serious legal and factual

questions placed the litigation's outcome in doubt." *Tennille v. W. Union Co.*, 785 F.3d 422, 434 (10th Cir. 2015); *see also Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188.

With respect to the merits of Plaintiff's claims, Plaintiff believes that he will prevail in demonstrating that Defendant's hourly field employees are owed additional compensation under Colorado state law. Defendant, however, contends that it properly calculated the overtime pay of its employees and properly paid for all hours worked. Moreover, Defendant is confident that Plaintiff would ultimately not prevail in certifying the class because individualized inquiries would be necessary to determine whether additional compensation should have been included in overtime rates and to determine the hours worked by each employee. Nonetheless, while both parties believe their positions are strong, both recognize that they may not ultimately prevail, and that the proposed settlement alleviates the uncertainty for both sides.

Even aside from the risks associated with determining liability, significant risks exist as to the amount of possible damages. For example, the parties dispute whether the three-year limitations period applies, or whether the two-year period for non-willful violations would be applicable in this matter. *See Tuten*, 41 F. Supp. 3d at 1007 (approving final settlement where questions of law and fact existed with respect to applicable statute of limitations). Moreover, the availability of state law penalties and/or FLSA liquidated damages is a disputed issue. Because there are several important questions of law and fact regarding liability and damages that remain unresolved, the second factor weighs in favor of approval of the Settlement. The Settlement reached provides a recovery for the Plaintiffs and Class Members without the substantial prospect of years of additional delay. The prospect of years more litigation delay would, without

the guarantee of recovery, weigh in favor of approval of the Settlement. Ultimately, the proposed Settlement provides a sizeable monetary recovery, while eliminating substantial risks and preventing the litigation from dragging out even longer.

### D.    The Value of an Immediate Recovery Outweighs the Possibility of Future Relief After Protracted and Expensive Litigation.

Courts also "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation." *In re King Res. Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Col. 1976); *see also Jones*, 741 F.2d at 324 (courts should consider "whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation"); *Rutter*, 314 F.3d at 1188; *see also Crocs*, 2013 WL 4547404. at *12 ("Given the uncertainty of plaintiffs' likelihood of success on the merits and the prospects of prolonged litigation, the Court finds that immediate recovery outweighs the time and costs inherent in complex. . . litigation, especially when the prospect is sonic recovery versus no recovery.")  The interest in avoiding, continuing complex litigation justifies accepting the Rule 23 Settlement. *Wilkerson*, 171 F.R.D. at 288.

Although Class Counsel believe that the Class claims are meritorious, Counsel recognizes the significant risks and expense necessary to further prosecute the claims against Defendant through motion practice, trial, and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails.  In considering whether to enter into the Settlement, the Plaintiffs weighed the value of an immediate recovery against the prospect that significant proceedings remained ahead, including additional discovery, class certification briefing, including the risk of decertification, summary

judgment briefing, *Daubert* motions, trial preparation and, of course, a trial. Class Counsel also considered the risks inherent in litigating a complex wage and hour class action through summary judgment and trial, and the particular risks at issue in this case.

Considering all of these factors, the value of an immediate recovery outweighs the possibility of any additional future relief. This weighs in favor of preliminary approval. *See, e.g., Nieberding v. Barrette Outdoor Living, Inc.*, No. 12-CV-2353-DDC-T,11, 2015 WL 1645798, at *3-5 (D.Kan. Apr. 14, 2015); *see also Seiffer v. Topsy's Intl, Inc.*, 70 F.R.D. 622, 625, 629 (D.Kan. 1976)(approving partial settlement and noting that although plaintiffs had "no serious doubts" about establishing liability, the "risk of ultimately recovering money damages dogs the heels of even able and zealous counsel," especially in large and complex cases, and the "certainty of fixed recovery by way of agreement is often preferable to the vagaries of what might be achieved by a trial.")

### E.    The Parties and Their Counsel Have Judged the Settlement as Fair and Reasonable.

"Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F. Supp. 2d 1179, 1183 (D Kan. 2002); *Wilkerson*, 171 F.R.D. at 288-89. Class Counsel and Defendant's Counsel have extensive experience with class action litigation and wage and hour litigation, in particular. They have determined that the proposed settlement is fair and reasonable.

The proposed Settlement represents a very meaningful recovery of the damages suffered by the Class and is well within the range of what is considered fair, reasonable, and adequate. In light of the risks Plaintiffs face in advancing this matter to trial, the proposed Settlement is a very favorable result. *See also Bower v. Cycle Gear, Inc*, 2016

WL 4439875, at *7 (N.D.Cal. Aug. 23, 2016)(reasoning that "the results obtained for the Class Members were very favorable" where the average recovery was $183.70); *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 982 (E.D.Cal. 2012)(reasoning that average recovery of over $2,000 per Plaintiff was a "favorable" result).

Courts are also to consider "the judgment of the parties that the settlement is fair and reasonable." *Jones*, 741 F.2d at 324; *Rutter*, 314 F.3d at 1188. Counsel for the Parties believe that the Settlement is more than fair and reasonable. "Counsels' judgment as to the fairness of the agreement is entitled to considerable weight." *Lucas*, 234 F.R.D. at 695 quoting *Marcus v. Kansas Dep't. of Revenue*, 209 F. Supp. 2d 1179. 1183 (D.Kan. 2002). Here, Class Counsel is among the most experienced and respected wage and hour lawyers in Colorado, if not the nation, and has tirelessly advanced the Class claims since the case's inception. In Class Counsel's opinion, the Settlement is more than fair and reasonable, it represents an outstanding result for the Class in light of the risks Plaintiff faced in going forward. The Court will ordinarily grant final approval where the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval." *In re Motor Fuel Temperature Sales Practices Litig.*, 258 F.R.D. 671, 675 (D.Kan. 2009)(citation omitted).

In light of the substantial recovery to the Class, the arm's-length nature of the negotiations, the involvement of an independent and highly experienced mediator, and the participation of sophisticated counsel throughout the litigation, a finding that the proposed Settlement is sufficiently fair, reasonable and adequate to justify final approval

is more than justified.  The Settlement Agreement satisfies each of the Tenth Circuit's stated criterial for approval, and the Court should grant final approval.

**F.    The requirements of Rule 23(e)(2) are satisfied.**

In addition to the factors established by the Tenth Circuit, the proposed settlement satisfies the requirements of Rule 23(e)(2).  As addressed above, named Plaintiff and Class Counsel have litigated this case for more than two years and engaged in voluminous written discovery, depositions, motion practice, and a day-long mediation that ultimately resulted in significant compensation to the Settlement Class.  There are no conflicts or interests of Plaintiff or Class Counsel that are antagonistic to the Settlement Class, and Class Counsel is experienced in these types of wage and hour matters.  The settlement that was reached was the result of a day-long mediation and was negotiated intensely by both parties.  The settlement that was achieved provides adequate relief for the Settlement Class, as demonstrated above, given the uncertainty of liability, particularly on a class-wide basis; the substantial costs and delay that would result from trial and appeal; the expedient claims-process established by the settlement; and the reasonable fee award given the substantial time investment of Class Counsel.  Lastly, the settlement treats all members of the Settlement Class fair relative to each other given the formulas utilized to determine each member's payment.  Moreover, no members of the Settlement Class objected to the settlement and only 1 member (less than .1%) exercised his rights opt-out of the settlement.  The Court should approve the settlement as fair and reasonable.

**G.** **The Settlement Class Meets the Requirements of Rule 23(a) For Settlement Purposes.**

**1.** **Numerosity**

The numerosity requirement of Rule 23(a)(1) is established if the class is so numerous that joinder of all members is impracticable. In the instant case, the Settlement Class consists of 1,036 individuals, which satisfies the numerosity requirement of Rule 23(a)(1). *See, e.g. Maez v. Springs Automotive Group, LLC*, 268 F.R.D. 391, 395 (D.Colo. 2010)(391 putative class members satisfied numerosity requirement).

**2.** **Commonality**

"A finding of commonality requires only a single question of law or fact common to the entire class." *DG v. Devaughn*, 594 F.3d 1188, 1194-1195 (10th Cir. 2010). "[E]very member of the class need not be in a situation identical to that of the named plaintiff." *Milonas v. Williams*, 691 F.2d 931, 938 (10th Cir. 1982). Here, Plaintiff contends the primary questions of law and fact central to the claims against Defendant include:

a. Whether the additional payments to the class members were compensation;

b. Whether additional compensation is due to the Class Member for allegedly uncompensated travel time;

c. Whether Defendant willfully violated the Colorado Wage Claim Act; and

d. Whether Plaintiff and the class members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed class members share sufficient commonality to satisfy FED. R. CIV. P. 23(a)(2).

### 3. Typicality

To satisfy the typicality requirement FED. R. CIV. P. 23(a)(3), Plaintiff must show that his claims "are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). The typicality requirement ensures that the absent class members are adequately represented by the lead plaintiff such that the interests of the class will be fairly and adequately protected in their absence. *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982). "[D]iffering fact situations of class members do not defeat typicality under Rule 23(a)(3) so long as the claims of the class representative and class members are based on the same legal or remedial theory." *Adamson v. Bowen*, 855 F.2d 668, 676 (10th Cir.1988).

Plaintiff alleges that he and the other putative class members were paid additional compensation that was not included in the calculation of the regular rate. Plaintiff further alleges that he was not paid for alleged travel time. As a result, Plaintiff claims that he and the other putative class members are owed additional compensation. Plaintiff contends that the legal standards and requirements for proving the subject wage and hour claims under Colorado law are the same for Plaintiff's individual claims and those of all of the putative class members. Thus, for settlement purposes, Plaintiff's claims are sufficiently typical of the putative class to satisfy FED. R. CIV. P. 23(a)(3).

### 4. Adequacy

The last requirement of Rule 23(a) is that the representative party will fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The Tenth Circuit has identified two questions relevant to the adequacy of representation inquiry: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class

members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187–88 (10th Cir. 2002). "Adequate representation depends on, among other factors, an absence of antagonism between the representatives and absentees, and a sharing of interest between representatives and absentees." *In re Molycorp, Inc. Securities Litigation*, 2017 WL 4333997, at *6–7 (D.Colo., 2017)(citations omitted).

Plaintiff asserts that neither he nor his counsel have any interests antagonistic to those of the putative class members.  Plaintiff contends he has communicated regularly with Class Counsel, and that Plaintiff, through his counsel, has prosecuted this action vigorously on behalf of himself and the putative class.  Plaintiff contends his counsel has considerable experience as lead counsel in class action wage and hour litigation.  Thus, for settlement purposes, Plaintiff has established that Plaintiff and Class Counsel fairly and adequately protected the interests of the putative class to satisfy FED. R. CIV. P. 23(a)(4).

## H.    The Settlement Class Meets the Requirements of Rule 23(b)(3) for Settlement Purposes.

Plaintiffs assert that certification is proper under Rule 23(b)(3) for settlement purposes.  Rule 23(b)(3) permits class certification when (1) common questions of law and fact predominate over any individual claims and (2) a class action is the superior method to fairly and efficiently adjudicate the matter.   Under the Rule 23(b)(3) predominance analysis, the Court must determine whether the proposed class is "sufficiently cohesive to warrant adjudication by representation." *See Amchem Products, Inc. v. Windso*r, 521 U.S. 591, 623 (1997).

### 1.    Predominance

The predominance requirement is satisfied if a plaintiff establishes that a common nucleus of facts and potential legal remedies dominates the litigation.  *Id.*  As explained above, Plaintiff asserts that the common nucleus of facts in the present case derives from the alleged practices that (1) excluded certain alleged compensation from the calculation of the Settlement Class Members' regular rate of pay for overtime purposes and (2) did not compensate Settlement Class Members for alleged travel time.  Based on these alleged violations of law, Plaintiff alleges that the Settlement Class Members would be entitled to the same legal remedies.  Accordingly, preliminary class certification for settlement purposes to effectuate the Settlement Agreement is proper.  Additionally, Plaintiff contends that class certification in this case serves the judicial economy function of Rule 23 class actions.

### 2.    Superiority

The Plaintiff alleges that a proposed class action settlement is the superior method of resolving the dispute in comparison to available alternatives.  A class action is the superior method for managing litigation if no realistic alternative exists.  *Valentino v.Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-1235 (9th Cir. 1996).  Plaintiff asserts that the alternative method of resolution is hundreds of individual claims, but individual cases would be uneconomical for potential plaintiffs because the cost of litigation dwarfs their potential recovery, and for Defendant and the Court because it would cause an extensive duplication of efforts and resources.  Because it is likely that each individual Settlement Class Member could only pursue relatively small claims, such individuals have no particular interest in individually controlling the prosecution of separate actions.

Additionally, in the instant action, the Settlement Class Members had the option to opt-out of the proposed settlement, thus allowing individuals the opportunity to control the litigation.

There is no other pending litigation involving the Settlement Class Members, and the class action mechanism is the most efficient manner or adjudicating all of the claims of the Settlement Class.  The Settlement Class satisfies the requirements of Rule 23 and should be approved as fair and reasonable.

## VI.  THE FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT SHOULD BE APPROVED

### A.  Introduction

"Ordinarily there [is] no need" for the Court to approve the settlement of a "dispute between employer and employees [because] people may resolve their own affairs, and an accord and satisfaction bars a later suit."  *Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).  However, this case involves claims for unpaid overtime wages brought pursuant to the FLSA, which is "designed to prevent consenting adults from transacting about minimum wages and overtime pay."  *Id.*  As a result, some "Courts therefore have refused to enforce wholly private settlements."  *Id.* citing *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir. 1982).

Where approval is required, most courts recognize only two valid ways by which an individual can release or settle a FLSA claim: (1) a DOL-supervised settlement under 29 U.S.C. § 216(c); or (2) a court-approved stipulation of settlement.  *Lynn's Food Stores*, 679 F.2d at 1353; *Jarrard v. Southeastern Shipbuilding Corp.*, 163 F.2d 960 (5th Cir. 1947)(enforcing a state court stipulated judgment entered upon disputed issues of both law and fact as res judicata to bar a federal FLSA suit).  Settlements in the context of

litigation, where there are bona fide issues in dispute and where employees are represented by "an attorney who can protect their rights under the statute" are subject to approval by district courts "in order to promote the policy of encouraging settlement of litigation."  *Lynn's Food*, 679 F.2d at 1354.

When reviewing a proposed FLSA settlement, the district court must "scrutiniz[e] the settlement for fairness" and decide whether the proposed settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Lynn's Food*, 679 F.2d at 1353, 1355.  The endorsement of a proposed FLSA settlement by counsel for both parties is a "factor that weighs in favor of approval" of an FLSA settlement agreement because "counsel for each side possess[es] the unique ability to assess the potential risks and rewards of litigation."  *Quintanella v. A&R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449, at *14 (S.D.Tex. May 7, 2008).

The Parties agree that the Settlement is fair and represents a reasonable compromise of the disputed issues in this case.

### B.    The Terms of the Settlement Provide for Substantial Compensation for the Claims Raised in the Lawsuit.

The Parties' FLSA Settlement is fair and reasonable and provides fair compensation to the Opt-In Claimants.  The damages that were calculated were based upon actual time records.  Given that the Opt-In Claimants were paid on an hourly rate basis, time records exist indicating the number of overtime hours worked by each Opt-In Claimants.  The Parties then used these time records to determine the amount of overtime wages that could be due to each individual under Plaintiff's theory of the case.  Given the increased difficulty of proof with regard to the Texas Opt-In Claimants' claims, the minimum payment of $250 to each (a total sum of $$24,677.31) is reasonable.

The recovery reached in the Settlement Agreement is also significant given that the Parties disagreed over the merits of the case. Plaintiff argued that the additional per-diem paid to the Opt-In Claimants constituted wages that should have been factored into their overtime pay. Defendant countered that that the per-diems reimbursed actual business expenses. Further, the Parties disagreed as to whether the Plaintiffs could satisfy their burden to demonstrate that Defendant acted willfully, which in turn affects whether Plaintiffs could recover damages for two (2) years or three (3) years prior to the filing of the Complaint. See 29 U.S.C. § 255. The Parties also disagreed as to whether Defendant could satisfy its burden of proving good faith and reasonableness and, consequently, the extent to which liquidated damages could be awarded in the case. Notably, the U.S. Department of Labor had audited Defendant's pay practices and found no violations, which Defendant argued warrants application of a two year recovery period and against any award for liquidated damages.

Additionally, the Settlement Agreement contemplates a reasonable amount to be paid to Class Counsel as attorneys' fees and expenses, and this amount is fair and reasonable in light of the complexity of the case, the issues in dispute, the uncertainty of litigation, the skill and experience of Class Counsel, and the recovery by the Opt-In Claimants. In light of the amount allocated as attorneys' fees and costs, the Settlement Agreement is fair and reasonable.

Due to the directly conflicting factual allegations and differing views on the applicable law, the Parties believe that the amounts reflected in the Settlement Agreement are in the best interest of the Opt-In Claimants. In particular, the Settlement Agreement allows the Opt-In Claimants to recover a significant amount while avoiding

any risk of a judgment in Defendant's favor.  More importantly, the Settlement allows the Parties to resolve the claims at issue without the necessity or delay of trial and possible appeals.  In exchange for these payments, the Opt-In Claimants will be subject to only a limited release relating to the specific claims at issue in this lawsuit.

### C.    The FLSA Settlement Should Be Approved by the Court.

The terms of the FLSA Settlement have been approved by the Plaintiffs, their counsel, Defendant, and Defendant's counsel.  The Settlement was negotiated at arm's-length, and the Parties voluntarily and knowingly entered into the Settlement Agreement. The Parties agree that the terms of the Settlement Agreement are reasonable, fair and just, and they settle all claims in this lawsuit.

In determining whether the settlement is fair and reasonable, the Court should note that "there is a 'strong presumption in favor of finding a settlement fair.'"  *Domingue v. Sun Elec. & Instrumentation, Inc.*, 2010 WL 1688793, at *1 (M.D.La. 2010) citing *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D.La. 2004). Moreover, "that th[e] settlement is the negotiated result of an adversarial proceeding is an indication of its fairness."  *Id.*

The Settlement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years.  Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation.

After the Parties reached an agreement on the Settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of

the release.  The Settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations.

Ultimately, there can be no question that this Settlement Agreement represents fair value for the Opt-In Claimants.  Each will receive back wages under federal law without the risk or expense of trial.  Indeed, the amounts recovered under the Settlement are fair on both a collective and individual basis.

## VII.     ATTORNEY'S FEES, LITIGATION COSTS, AND ADMINISTRATOR COSTS

"In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement."  FED. R. CIV. P. 23(h).  In class action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme Court has indicated that computing fees as a percentage of the common fund recovered is the proper approach.  *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  Further, the Tenth Circuit has specifically recognized the propriety of the percentage-of-the-fund method when awarding fees. *See Gottlieb v. Barry*, 43 F.3d 474, 484 (10th Cir. 1994).  Here, Class Counsel seeks a fee paid out of the common fund created for the benefit of the Class.  *Boeing Co. v. Van Gernert*, 444 U.S. 472 478-79 (1980).

The Tenth Circuit has adopted a test that the Court of Appeals for the Fifth Circuit adopted in *Johnson v. Georgia Highway Express, Inc.,* which analyzes the following twelve factors: (i) the time and labor required; (ii) the novelty and difficulty of the question presented in the case; (iii) the skill requisite to perform the legal service properly; (iv) the preclusion of other employment because of acceptance of the case; (v) the customary

fee; (vi) whether the fee is fixed or contingent; (vii) any time limitations the client or circumstances imposed; (viii) the amount involved and the results obtained; (ix) the attorneys' experience, reputation, and ability; (x) the undesirability of the case; (xi) the nature and length of the professional relationship with the client; and (xii) awards in similar cases. *See Gottlieb v. Barry,* 43 F.3d at 483 & n. 4 (10th Cir. 1994) citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d at 717–19. "[R]arely are all of the *Johnson* factors applicable."  *Uselton v. Commercial Lovelace Motor Freight, Inc.,* 9 F.3d 849, 854 (10th Cir. 1993).  Class Counsel seeks attorneys' fees of $396,000 (36% of the common fund) plus litigation costs in the amount of $10,503.66.

 "Courts have consistently held that the most important factor within this analysis is what results were obtained for the class."  *Lane v. Page*, 862 F. Supp. 2d 1182, 1254 (D.N.M. 2012).  Here, under Defendant's theory, many, if not all, class members would be owed nothing, or at best close to zero.  Class Counsel has secured a class settlement that provides for a reasonable estimate of damages for all class members given the facts of the case and the relative merits of Plaintiff's claims and Defendant's possible defenses.

Moreover, applying the *Johnson* factors demonstrates that the fees and expenses sought by Class Counsel are reasonable.  First, the time and labor involved supports the fees.  The litigation has been ongoing since 2018.  Over that period of time, Class Counsel prosecuted the litigation without payment and advanced all costs.  Class Counsel also engaged in significant discovery and motion practice.[2]

---

[2] Over the last two years and through completion of this settlement, Class Counsel will have invested approximately 290 hours into this litigation plus $10,503.66 in costs. (Gonzales Dec. at ¶10).  Given his experience and specialization in this complex area of

Second, the novelty and difficulty of the questions presented support the fees sought by Class Counsel. This case involved complex employment law issues as well as complicated issues relating to class certification.

Because factors three and nine are closely related, the Court analyzes together the skill requisite to perform the legal services properly, and the experience and skill of Class Counsel. Here, Class Counsel has significant experience prosecuting complex wage and hour class actions and collective actions. *See, Declaration of Brian D. Gonzales* ("Gonzales Dec."), attached hereto as Exhibit 2. Class Counsel represents workers across the country in wage and hour matters and has successfully prosecuted class and collective actions before this Court numerous times. Accordingly, Class Counsel's skill and reputation weigh in favor of the requested attorneys' fee and expense award.

Further, the attorneys' fees in this case were contingent. This factor weighs in favor of the requested attorneys' fees award, because "[s]uch a large investment of money [and time] place[s] incredible burdens upon ... law practices and should be appropriately considered." *Feerer v. Amoco Prod. Co.,* 1998 U.S. Dist. LEXIS 22248, at *33; *see also Been v. O.K. Indus., Inc.,* No. CIV–02–285–RAW, 2011 WL 4478766, at *9

---

practice, Class Counsel believes $600/hour to be a reasonable rate. *Id.* at ¶11; *Magouirk v. Spanish Trails, Inc.,* NO. 18-cv-01669-PAB-KLM, 2020 WL 2512831, *2 (D.Colo May 15, 2020)(recognizing reasonable hourly rates between $150 and $675 for attorneys and staff members involved in litigation) citing *Shaw v. Interthinx, Inc.,* No. 13-cv-01229-REB-NYW, 2015 WL 1867861, *8 (D.Colo. Apr. 22, 2015). Given Class Counsel's attorney's fees of $174,000, the $396,000 contingent, common-fund percentage fee award is well within the range of reasonableness. *Magouirk*, 2020 WL 2512831, *2 (recognizing that lodestar multipliers between 2.5 and 4.6 are reasonable) citing *Mishkin v. Zynex, Inc.,* No. 09-cv-00780-REB-KLM, 2012 WL 4069295, *2 (D.Colo. Sep. 14, 2012).

(E.D.Okla. Aug. 16, 2011)("Courts agree that a larger fee is appropriate in contingent matters where payment depends on the attorney's success.")  Class Counsel assumed the risk that the litigation would yield no recovery and for years received no compensation for the time and expenses they spent during the course of the litigation.

The requested fee award of 36% is appropriate in complex cases taken on a contingent fee basis.  *See, e.g., Cook v. Rockwell Int'l Corp*., No. Civ. A. 90-0181-JLK, 2017 WL 5068121 (D.Colo. Apr. 28, 2017)(awarding 40% fee to class counsel); *see, e.g. Sandras v. Expeditors and Production Serv's*., No. Civ. A. 16-0239, 2019 WL 658819 (W.D La. Feb. 13, 2019)(awarding class counsel 40% fee plus costs); *Whittington v. Taco Bell of Am., Inc.,* No. 10-CV-01884-KMT-MEH, 2013 WL 6022972, at *6 (D.Colo. Nov. 13, 2013); *In re Melridge, Inc. Sec. Litig.,* CV 87-1426-FR, Dkt. No. 2419 (D.Or. Apr. 15. 1996); *Legros v. Mud Control Equipment, Co*., 2017 WL 925730, * 3 (W.D.La. 2017); *Hebert v. Baker Hughes, Inc*., 2016 WL 7029336, *4 (W.D.La. 2016).

Additionally, given the time and effort that this case has taken and the complexity of the issues would make it undesirable to many attorneys.  *See Been v. O.K. Indus., Inc.,* 2011 WL 4478766, at *10 (finding that the time and effort expended in an expensive litigation made a class action undesirable for class counsel).  Under Defendant's theory, the Plaintiffs, Class Members and Opt-In Claimants would be owed zero.  Furthermore, the legal theories involved required substantial expertise in the wage and hour field.  Many attorneys would not have understood the nuanced arguments asserted, nor would they have been able to discern whether Plaintiff even had a viable claim, **especially given that Defendant passed a U.S. Department of Labor audit of its pay practices**. Additionally, other lawyers may not have had the expertise to ascertain and evaluate the

possible damages awards available to the Class Members and Opt-In Claimants in this case.  Thus, the work of Class Counsel provided a significant benefit to the Class Members and Opt-In Claimants.  Had this case not settled, Class Counsel would have vigorously litigated the case without any promise of success and compensation.  Yet, at every step of the litigation, Defendant could have succeeded.  Applying the relevant factors, Class Counsel ask that the Court approve the requested award of $396,000 in attorneys' fees and $10,503.66 in litigation costs.

**VIII.    SERVICE AWARD**

In addition, the Parties have moved the Court to approve a service award to the Class Representative. Service awards are typical in class action cases.  *See* 4 William B. Rubenstein et al., *Newberg on Class Actions* § 11:38 (4th ed. 2008).  Courts have stated that service awards for class representatives are justified to give incentive to a class representative to come forward when none are forthcoming, and to compensate a class representative for risks they take and work they perform on behalf of the class.  *See UFCW Local 880–Retail Food Employers Joint Pension Fund v. Newmont Mining Corp.,* 352 Fed. Appx. 232, 235-36 (10th Cir. 2009).  "[A] class representative may be entitled to an award for personal risk incurred or additional effort and expertise provided for the benefit of the class."  *UFCW Local 880-Retail Food Employers Joint Pension Fund v. Newmont Min. Corp.*, 352 Fed. Appx. 232, 235 (10th Cir. Sept. 11, 2009); *see also Lucken Family Ltd. Partnership v. Ultra Resources, Inc.*, 2010 WL 5387559, at *6 (D.Colo. Dec. 22, 2010)("Courts have held that incentive awards are an efficient and productive way to encourage members of a class to become class representatives, and to reward the efforts they make on behalf.")

When evaluating the reasonableness of a service award, courts may consider factors such as "'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation. . . and reasonabl[e] fear[sof] workplace retaliation.'" *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Ultimately, the amount of the service award is up to the Court's discretion. However, in a wage and hour class action like this, the requested award of $15,000 is reasonable because of "the fear and risk of retaliation and embarrassment in the workplace, on top of the time and administrative commitment that is commonly shared in all cases." *Scovil v. FedEx Ground Package Sys., Inc.*, No. 1:10-CV-515-DBH, 2014 WL 1057079, at *6–7 (D.Me. Mar. 14, 2014) citing Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L.Rev. 1303, 1308 (2006)(considering 374 cases from 1993–2002 and finding that then—**between 26 and 17 years ago**—the median incentive payment was $4,357 and the mean incentive payment was $15,992).

The service award here is appropriate because the Class Representative took a substantial risk in coming forward with reports of Defendant's alleged wage and hour violations when no other employees were willing to do so. The Class Representative faced the risk of being retaliated against or having a reputation of being litigious, which may have caused other oil industry employers to refuse to hire them. *See, e.g., Cazorla v. Koch Foods of Mississippi, L.L.C.,* 838 F.3d 540, 561 (5th Cir. 2016)("[E]mployers commonly and unlawfully retaliate against irksome workers . . . ."); *see also Rivera v. NIBCO, Inc.,* 364 F.3d 1057, 1064-65 (9th Cir. 2004). In addition, the Class

Representative sat for deposition, responded to discovery requests and assisted counsel with developing the legal theories for the case. Moreover, by the time he receives payment on his claim, over two years will have passed since he commenced his lawsuit. He accepted this delay despite the likelihood that, if he had elected not to pursue claims on behalf of the class, he likely could have settled his individual claim at the outset. As a result, the modest service award sought here is reasonable. *Blanco v. Xtreme Drilling and Coil Services, Inc.*, No. 16-cv-00249-PAB-SKC, 2020 WL 4041456, *7 (D.Colo. July 17, 2020)(approving $24,000 service award in part due to risk of oil industry "blackballing"); *Valverde v. Xclusive Staffing, Inc.*, No. 16-cv-00671-RM-NRN, 2020 WL 4057585, *3 (D.Colo. July 20, 2020)(approving $20,000 service award)

## IX.    **CONCLUSION**

For the reasons set forth herein, the Parties jointly move for an order: (1) granting final approval to the Rule 23 Class Action Settlement and FLSA collective action settlement; (2) approving the attorneys' fees and litigation costs to Class Counsel; (3) approving the service award to the Class Representative; and (4) dismissing this case with prejudice.

For the Court's convenience, a proposed order is attached hereto as Exhibit 3.

Respectfully submitted this 25th day of August, 2020.


*/s/Brian D. Gonzales*
Brian David Gonzales, Esq.
**THE LAW OFFICES OF**
**BRIAN D. GONZALES**
2580 East Harmony Road, Suite 201
Fort Collins, CO 80528
Telephone: (970) 214-0562
BGonzales@ColoradoWageLaw.com

**ATTORNEYS FOR PLAINTIFF JORDON**
**MACDONALD, INDIVIDUALLY AND ON BEHALF**
**OF ALL SIMILARLY SITUATED PERSONS**

*/s/J. Michael Rose*
J. Michael Rose
Jeff McPhaul
**LOCKE LORD LLP**
600 Travis Street, Suite 2800
Houston, Texas 77002-3095
mrose@lockelord.com
jmcphaul@lockelord.com

**ATTORNEYS FOR DEFENDANT**